# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02645-STV

JOHN VAZQUEZ,

     Plaintiff,

v.

FOREST ANDERSEN and
ANDREW TOPE,

     Defendants.

_____

# ORDER
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant Forest Andersen's Motion for Summary Judgment (the "Andersen Motion") [#20] and Defendant Andrew Tope's Motion for Summary Judgment (the "Tope Motion") [#21]. The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#10, 13] The Court has carefully considered the Motions and related briefing, the entire case file, the applicable case law, and the argument of the parties presented at the Motion Hearing on May 3, 2019. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Andersen Motion and **GRANTS IN PART AND DENIES IN PART** the Tope Motion.

## I.    UNDISPUTED FACTS[1]

This case arises out of an encounter between Plaintiff, the former Mayor of Windsor, Colorado, and Defendants, two officers with the Timnath Police Department. The undisputed facts are as follows.

On October 7, 2017, Plaintiff was walking home from a restaurant in Fort Collins, Colorado where he had had dinner with his wife. [#31-1, ASOF1-4]  His home in Weld County, Colorado was approximately 11.5 miles from the restaurant. [*Id.* at ASOF6] While walking home on East Harmony Road in Larimer County, Plaintiff came upon Officer Forest Andersen who was sitting in his parked patrol car near the intersection with Three Bell Parkway. [*Id.* at ASOF7]  At the time, Andersen was working a special assignment DUI enforcement shift. [*Id.* at ASOF8]  Plaintiff requested a ride home, which Officer Andersen declined. [*Id.* at ASOF9-10]  Plaintiff thus continued to walk home. [*Id.* at ASOF11]

At approximately 9:53 p.m., Officer Andrew Tope, who was also working a DUI enforcement shift, came upon Plaintiff walking along East Harmony Road in rural Timnath. [*Id.* at ASOF12-15]  The portion of East Harmony Road where Officer Tope encountered Plaintiff is a two-lane road without a sidewalk and is not well-lit. [*Id.* at ASOF15, 17]  At the time, Plaintiff, who is approximately six-feet, five-inches tall and

---

[1] The undisputed facts are drawn from the Separate Statement of Undisputed Material Facts and Supporting Evidence filed with the briefing on the Andersen Motion (the "Andersen Statement of Facts") [#31-1] and the Separate Statement of Undisputed Material Facts and Supporting Evidence filed with the briefing on the Tope Motion (the "Tope Statement of Facts") [#32-1].  The Court refers to the sequentially numbered facts set forth in the Andersen Statement of Facts as "ASOF#" and refers to the sequentially numbered facts set forth in the Tope Statement of Facts as "TSOF#."  The Court periodically cites directly to the exhibits cited by the parties in the statements of facts to provide additional context.

weighed at least 185 pounds, was wearing a dark sweatshirt and jeans.[2] [*Id.* at ASOF19, 49]

Officer Tope engaged Plaintiff to conduct a welfare check. [*Id.* at ASOF25] Officer Tope parked behind Plaintiff and turned on his overhead lights. [*Id.* at ASOF26] Plaintiff believed Officer Tope was Officer Andersen, who had just recently refused to give Plaintiff a ride. [*Id.* at ASOF32] An exchange occurred between Officer Tope and Plaintiff, and Plaintiff continued walking. [*Id.* at ASOF27] Officer Tope then pulled his patrol vehicle directly behind Plaintiff and told Plaintiff to stop and speak with him. [*Id.* at ASOF29] A further exchange occurred in which Plaintiff spoke to Officer Tope in a tone of voice that conveyed both frustration and irritation. [*Id.* at ASOF30] Plaintiff told Officer Tope to stop harassing him and, at some point during the conversation, called Officer Tope a smartass. [*Id.* at AUSF30-31]

---

[2] Defendants maintain that Plaintiff stumbled into Officer Tope's traffic lane. [#31-1, ASOF19] Plaintiff disputes this assertion. [*Id.*] As they do with respect to numerous allegedly undisputed facts, Defendants maintain that Plaintiff's denial is not based upon "personal knowledge of [Officer] Tope's observations" and that "Plaintiff has no evidence to support his allegation other than his self-serving declaration." [*Id.*; *see also id.* at AUSF3, 20-21, 27-28, 39-40, 45, 47, 50, 56, 62, 65, 68, 70, 72, 88, 110, 112-13, 119-21, 123-25, 127-30, 133, 139, 141, 145-51] But, Plaintiff's declaration reflects his own sworn statement about the events in question, and Defendants fail to explain how Plaintiff's sworn testimony is any more "self-serving" than Defendants' sworn testimony. There is no video evidence of what occurred on the roadside that evening, and the only participants in the event have provided differing accounts of what occurred. This is the classic example of a genuine dispute of fact. Additionally, on several occasions, Plaintiff has presented testimony provided by Officer Tope in the criminal proceedings that appears to contradict the testimony of Officer Andersen. [*See, e.g., id.* at ASOF38, 43, 46, 51] Defendants object that Plaintiff has "not established the admissibility of, let alone authenticated," those statements from Officer Tope's prior testimony. [*Id.*] Defendants fail to explain either: (1) why Defendants' citation to trial transcripts is permissible, but Plaintiff's is not, or (2) why Officer Tope would be prevented in this case from testifying about his observations on the night in question.

At 9:55 p.m., Officer Andersen arrived on the scene. [*Id.* at ASOF37] When Officer Andersen arrived, Plaintiff was exhibiting animated gestures consistent with someone expressing frustration. [*Id.* at ASOF38] Upon his arrival, Officer Andersen took over the situation and made himself the primary officer. [*Id.* at ASOF42] Officer Andersen requested that Plaintiff provide his identification. [*Id.* at ASOF39] An exchange occurred and Plaintiff called Officer Andersen a bully. [*Id.* at ASOF39, 44] During this initial interaction, Plaintiff raised his hands in the air; Plaintiff maintains he did this to show the officers that he was not a threat. [*Id.* at ASOF47]

Officer Andersen has testified that he was concerned Plaintiff would strike him, but Plaintiff has filed a sworn declaration stating that he did not take any aggressive action and, indeed, shouted out that he was not resisting. [*Id.* at ASOF51; #25-2 at ¶ 50] In any event, Officer Andersen applied a wristlock maneuver (the "Koga Hold") to Plaintiff. [#31-1, ASOF55] While Officer Andersen has testified that the Koga Hold does not cause significant pain, Plaintiff maintains that the maneuver did cause him extraordinary pain. [*Id.* at ASOF55, 121] Officer Andersen then placed Plaintiff in handcuffs. [*Id.* at ASOF55] At the time of the handcuffing, Plaintiff had not committed any crime. [*Id.* at ASOF 106]

As with much of the events that evening, what happened next is a matter of dispute. Plaintiff maintains that Officer Andersen told Plaintiff that he was "going to jail," though Officer Andersen denies making any such statement. [*Id.* at ASOF56] Officer Andersen, on the other hand, testified that he was concerned Plaintiff may have a weapon and therefore he decided to walk Plaintiff to Officer Tope's vehicle so that Officer Andersen could conduct a pat-down search of Plaintiff. [*Id.* at ASOF57-58] Prior to

Officer Andersen applying the Koga Hold and walking Plaintiff to Officer Tope's vehicle, neither officer had observed a weapon or any obvious signs of one. [*Id.* at ASOF 97]

Once they reached Officer Tope's vehicle, Officer Andersen maintains he began patting Plaintiff down for weapons. [*Id.* at ASOF61] Plaintiff, on the other hand, maintains that Officer Andersen shoved his knee and thigh into Plaintiff's groin and then conducted the search. [*Id.* at ASOF61, 126] According to Plaintiff, Officer Andersen's "pat-down" search included digging into Plaintiff's pants pockets. [*Id.* at ASOF61, 130] Plaintiff further maintains that Officer Andersen would forcibly pull Plaintiff's handcuffed hands away from his body, up towards the sky, then slam Plaintiff's body back down into the patrol car. [*Id.* at ASOF 129] According to Plaintiff, this caused Plaintiff's head to hit the hood of the vehicle, causing Plaintiff pain. [*Id.* at ASOF125] Plaintiff maintains that he continues to suffer from shoulder and wrist pain as a result of the incident. [*Id.* at ASOF 133]

While this was occurring, Officer Tope stood to the side holding Plaintiff's arm. [*Id.* at ASOF65, 108] Officer Tope's role as cover officer was to watch the scene, make sure no other subjects approached, monitor traffic, and generally survey the parties' surroundings to protect everyone's safety. [*Id.* at ASOF66] Officer Tope has testified that Plaintiff's torso was in his field of vision, but that he was watching the roadway and was not paying much attention to Plaintiff. [#25-4 at 19-20] Plaintiff claims that after Officer Andersen first slammed Plaintiff's body onto the hood, Plaintiff reached out to Officer Tope and said "I am not resisting! Help me!" [#32-1, TSOF113] Plaintiff also claims that he screamed out in pain. [*Id.* at TSOF141] Officer Tope disputes Plaintiff's allegations. [*Id.* at TSOF113, 141]

According to Officer Andersen, during the pat-down, Plaintiff's right elbow struck the right side of Officer Andersen's face. [#31-1, ASOF68] Plaintiff denies that his right elbow ever struck Officer Andersen. [*Id.*] Officer Tope testified that he did not see Plaintiff strike Officer Andersen. [*Id.* at ASOF69] Officer Andersen announced that Plaintiff had struck Officer Andersen in the face, and then placed Plaintiff inside his patrol car. [*Id.* at ASOF70] Officer Andersen then transported Plaintiff to the Larimer County Jail. [*Id.* at ASOF73] During the transport, Plaintiff called Officer Andersen a "liar" and a "piece of shit," and told Officer Andersen that there is a "special place in hell for him." [*Id.* at ASOF75]

Following Plaintiff's arrest, Officer Andersen completed an Affidavit in Support of Warrantless Arrest. [*Id.* at ASOF87] Based upon this Affidavit, on October 8, 2017, Larimer County Court Judge Thomas Lynch found probable cause to arrest Plaintiff for Second Degree Assault. [#20-11] Plaintiff remained in custody for three days. [*Id.* at ASOF141] Plaintiff was prosecuted and his case was tried to a jury in May 2018. [*Id.* at ASOF143-44; #20-10 at 2] A jury acquitted Plaintiff after approximately fifteen minutes of deliberation.[3] [#31-1 at ASOF144]

On October 16, 2018, Plaintiff filed the instant lawsuit, asserting claims pursuant to 42 U.S.C. § 1983 against Officer Andersen for false arrest, excessive force, unlawful search, false imprisonment, malicious prosecution, and retaliation for exercise of Plaintiff's First Amendment rights, and against Officer Tope for excessive force, unlawful

---

[3] Defendants contend that "Plaintiff offers no admissible evidence in support of his allegation that the jury deliberated for 15 minutes." [#31-1, ASOF144] However, Plaintiff, who presumably attended and thus has personal knowledge of the criminal trial, provided his own sworn testimony that the jury deliberated for approximately 15 minutes. [#25-2 at ¶ 86] Defendants do not cite any evidence to contradict Plaintiff's account.

search, false arrest, and failure to intervene to stop Officer Andersen's alleged unlawful search, seizure, assaults, false arrest, and malicious prosecution of Plaintiff. [#1] On January 7, 2019, prior to the Court entering a Scheduling Order, Officer Andersen and Officer Tope filed separate motions for summary judgment, seeking judgment in their favor on all of the claims asserted against them. [#20, 21] On January 29, 2019, Plaintiff filed separate responses to the motions for summary judgment. [#25, 26] On February 11, 2019, Officer Andersen and Officer Tope filed replies in support of their motions for summary judgment. [#31, 32] On February 13, 2019, the Court granted Defendants' motion for protective order and stayed all discovery pending resolution of Defendants' motions for summary judgment. [#33] On May 3, 2019, the Court heard argument from the parties on Defendants' motions for summary judgment. [#35]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998). If the movant carries this initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Id.* at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party." *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

## III.    ANALYSIS

Defendants have moved for summary judgment on each of Plaintiff's claims. Defendants contend that the undisputed facts demonstrate that they did not violate

Plaintiff's constitutional rights and that, in any event, they are entitled to qualified immunity.

"Qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted)). To defeat a claim of qualified immunity, a plaintiff must demonstrate: (1) that the facts alleged make out a violation of a constitutional right, and (2) that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010).

The requirement that the right be clearly established presents a "demanding standard" intended to ensure the protection of "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In determining whether the constitutional right was clearly established at the time of the misconduct, the Tenth Circuit has explained:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify

as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted).

### A. Plaintiff's False Arrest/Imprisonment and Malicious Prosecution Claims

Claim One alleges that Officer Andersen falsely arrested Plaintiff, in violation of the Fourth Amendment, when he applied the Koga Hold and handcuffed Plaintiff. [#1 at 14-15] Claim Four alleges that Officers Andersen and Tope falsely arrested Plaintiff when they arrested Plaintiff and transported him to the Larimer County Jail. [*Id.* at 18-19] Claim Six alleges that Officer Andersen falsely imprisoned Plaintiff, in violation of the Fourth Amendment, when he formally arrested Plaintiff, transported him to the Larimer County Jail, and began criminal proceedings against Plaintiff.[4] [*Id.* at 21] Finally, Claim Seven

---

[4] Claim Six further alleges that Officer Andersen's false arrest "caused [Plaintiff] to be wrongly and falsely imprisoned . . . while a prisoner for three days at the jail." [#1 at ¶ 88] On the day after Plaintiff's arrest, however, Larimer County Court Judge Lynch found probable cause for Plaintiff's warrantless arrest for Second Degree Assault. [#20-11 at 2] To the extent Claim Six is based upon the time Plaintiff spent in jail after Judge Lynch made a probable cause determination, his claim is one for malicious prosecution, not false imprisonment, and thus is addressed by Claim Seven. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("[A] false imprisonment ends once the victim becomes held pursuant to [legal] process.") It therefore is not entirely clear how Claim Six differs from

alleges that Officer Andersen maliciously prosecuted Plaintiff, in violation of the Fourth Amendment, when he submitted the Affidavit that began the institution of criminal proceedings against Plaintiff.[5] [*Id.* at 22-23]

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting under color of state law." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (quoting 42 U.S.C. § 1983). Courts "use[ ] the common law of torts as a 'starting point' for determining the contours of claims of constitutional violations under § 1983." *Id.* at 1286. However, "[a]lthough the common law tort serves as an important guidepost for defining the constitutional cause of action, the ultimate question is always whether the plaintiff has alleged a constitutional violation." *Id.* at 1289.

Colorado common law prescribes only three elements for a claim of false arrest: "(1) The defendant intended to restrict the plaintiff's freedom of movement; (2) The defendant, directly or indirectly, restricted the plaintiff's freedom of movement for a period of time, no matter how short; and (3) The plaintiff was aware that [her] freedom of movement was restricted." Colo. Jury Instr.-Civ. ("CJI-Civ.") § 21:1 (2018). Even if these

---

Claim Four. It could be that Plaintiff is attempting to bring a false arrest claim in Claim Four and a false imprisonment claim in Claim Six, but, "[f]alse arrest and false imprisonment overlap" and, as a result, are often combined into a single claim of false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The parties addressed Claims Four and Six together [#20 at 13-16; #25 at 14-17], and the Court will do the same.

[5] Claim Five alleges that Officer Tope failed to intervene to prevent Officer Andersen's unlawful search, seizure, assaults, false arrest, and malicious prosecution of Plaintiff. [#1 at 19-21] The Court addresses the failure to intervene claim in the context of the claims asserted against Officer Andersen for his allegedly unconstitutional actions.

three elements are met, Defendants can defeat a false arrest claim if there was probable cause for the arrest.[6]

"[A] false imprisonment ends once the victim becomes held pursuant to [legal] process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (emphasis omitted). "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." *Id.* at 390 (quotation omitted). "From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.* (quotation omitted).

A Section 1983 malicious prosecution claim consists of the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original

_____

[6] Under Colorado common law, lack of probable cause is not an element of the false arrest claim but rather is considered in connection with the affirmative defense of privilege. *See Carani v. Meisner*, No. 08-cv-02626-MSK-CBS, 2010 WL 3023805, at *5 (citing CJI-Civ. § 21:11 ("Privilege of Peace Officer to Arrest without a Warrant")). The Court acknowledges, however, that the common law serves only as "a guidepost for defining the constitutional cause of action," *Pierce*, 359 F.3d at 1289, and the Tenth Circuit has often defined a claim for false arrest under Section 1983 simply as an arrest made without probable cause. *See, e.g.*, *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) ("In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime"); *Cottrell v. Kaysville City*, 994 F.2d 730, 733 (10th Cir. 1993) ("A plaintiff may recover damages under § 1983 for wrongful arrest if she shows she was arrested without probable cause."). Although this would indicate that lack of probable cause is an element of the claim that must be alleged and proven by the plaintiff, in other decisions, the Tenth Circuit has indicated that the defendant has the burden of proving probable cause for the arrest. *See Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) ("The burden of going forward with evidence establishing the existence of probable cause is on the defendant in a 1983 action."); *Martin v. Duffie*, 463 F.2d 464, 468 (10th Cir. 1972) (holding that defenses of good faith and privilege available at common law are available in Section 1983 cases, but "must be put forward by the officers as defenses"). For purposes of deciding the Motions, however, the Court need not resolve whether probable cause is an essential element of the claim on which Plaintiff bears the burden of proof or whether it is an affirmative defense on which Defendants bear the burden of proof. Even if construed as an affirmative defense, Defendants have raised it and offered evidence in support of their contention that probable cause existed.

action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). The Tenth Circuit has "repeatedly recognized" that "the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'" *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (quoting *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)). A "seizure" thus "is necessary to support [Plaintiff's] § 1983 malicious prosecution claim based on the initiation of criminal proceedings that [we]re dismissed." *Id.* Because of this seizure requirement, "[a] groundless charging decision may abuse the criminal process, but it does not, in and of itself, violate the Fourth Amendment absent a significant restriction on liberty." *Id.* at 915.

With these principles in mind, the Court turns to the false imprisonment and malicious prosecution claims against Officers Andersen and Tope.

### 1. Claim One

Claim One alleges that Officer Andersen falsely arrested Plaintiff when he applied the Koga Hold and handcuffed Plaintiff. [#1 at 14-15] Claim Five alleges that Officer Tope failed to intervene to prevent this allegedly unlawful arrest. [*Id.* at 19-20] Officers Andersen and Tope argue that Plaintiff has failed to establish a constitutional violation and, in any event, that the right at issue was not clearly established. [#20 at 4-6; #21 at 12-14] The Court addresses each argument below.

### a. The Constitutional Violation

Officer Andersen argues that his use of the Koga Hold and handcuffing did not constitute an arrest. [#20 at 4-5] Officer Tope incorporates by reference the arguments raised by Officer Andersen and further argues that Plaintiff failed to present evidence sufficient to prove that Officer Tope had a realistic opportunity to intervene. [#21 at 13-14] The Court addresses each officer's actions separately.

### i. Officer Andersen

Officer Andersen argues that he is entitled to summary judgment on Claim One because the undisputed facts demonstrate that he had only engaged Plaintiff in a noninvestigatory detention and never arrested Plaintiff. [#20 at 4-5] The Supreme Court has recognized that police officers are permitted to exercise "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence related to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). "In the course of exercising this noninvestigatory function, a police officer may have occasion to seize a person, as the Supreme Court has defined the term for Fourth Amendment purposes, in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993). "Whether the seizure of a person by a police officer acting in his or her noninvestigatory capacity is reasonable depends on whether it is based on specific articulable facts and requires a reviewing court to balance the governmental interest in the police officer's exercise of his or her 'community caretaking function' and the individual's interest in being free from arbitrary government interference." *Id.*

There are two problems with Officer Andersen's attempts to classify his actions as a valid, noninvestigatory detention. First, he fails to point to facts that would justify the level of intrusion he applied. The undisputed facts demonstrate that Plaintiff was walking along a country road past dark. Plaintiff may have been animated, but the officers did not observe Plaintiff with any weapons, and Plaintiff maintains that he was cooperating and not being aggressive toward the officers. [#31-1, ASOF97, 102, 103] While this event may have justified speaking to Plaintiff to make sure he was alright, Officer Andersen has not offered undisputed facts that would justify placing Plaintiff in a Koga Hold and then handcuffs. *See United States v. Soza*, 686 F. App'x 564, 568 (10th Cir. 2017) ("[I]n the cases where we have upheld officers' brandishing of firearms and use of handcuffs during an investigatory *Terry* stop, the officers generally either knew or had reason to believe the suspects were armed, or they had personally witnessed the suspects acting violently."); *Lundstrom v. Romero*, 616 F.3d 1108, 1123 (10th Cir. 2010) (finding that community caretaking role did not justify use of handcuffs where plaintiff did not act in a threatening manner or refuse to cooperate with police).

Second, Plaintiff has presented evidence, although disputed by Defendants, that Officer Andersen's actions did rise to the level of a formal arrest. In determining whether a formal arrest has occurred, courts ask whether "a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest." *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008) (quotation omitted). While not always the case, the use of handcuffs generally raises the encounter to that of a formal arrest. *Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007). Here, not only did Officer Andersen place Plaintiff in handcuffs, but according to Plaintiff's sworn

testimony, he also told Plaintiff that Plaintiff was going to jail.[7] [#31-1, ASOF56] Any reasonable person, placed in handcuffs and told that he was going to jail, would have understood that he was under arrest. *See Barton v. City & Cty. of Denver*, 432 F. Supp. 2d 1178, 1192-93 (D. Colo. 2006) (finding that plaintiff was under formal arrest, not investigative detention, where she claimed that she was handcuffed and told she could either talk to officers or she was "going to jail"). And, it is undisputed that Officer Andersen did not have probable cause to arrest Plaintiff at the time that he placed Plaintiff in the handcuffs. [#31-1, ASOF106]

Accordingly, the Court concludes that, viewing the evidence and drawing reasonable inferences therefrom in the light most favorable to Plaintiff, there is sufficient evidence from which a reasonable jury could conclude that Officer Andersen unlawfully seized Plaintiff when he placed Plaintiff in a Koga Hold, handcuffed him, and—according to Plaintiff—told Plaintiff he was going to jail.

### ii. Officer Tope

Plaintiff alleges that Officer Tope also violated his constitutional rights by failing to intervene to stop Officer Andersen from arresting him by applying the Koga Hold and handcuffs. [#1 at 19-20] The Tenth Circuit has made clear that while personal involvement is necessary for Section 1983 liability, "[p]ersonal involvement is not limited

---

[7] Although Officer Andersen disputes making this comment, Plaintiff has submitted a declaration attesting to the statement, and Defendants fail to offer any valid justification—such as inconsistencies with Plaintiff's deposition testimony—for the Court to disregard Plaintiff's sworn testimony about the circumstances surrounding the altercation, a topic about which Plaintiff clearly has personal knowledge. *See Nosewicz v. Janosko*, 754 F. App'x 725, 734 (10th Cir. 2018) ("Because [plaintiff's] version is not blatantly contradicted by the record, the judge was required to accept it at [the summary judgment] stage of the proceedings." (quotation omitted)).

solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quotation omitted). However, "[i]n order to be liable for failure to intervene, [an] officer[ ] must have observe[d] or ha[d] reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quotation omitted).

To the extent Officer Tope argues that he is not liable for failing to intervene because Officer Andersen's use of the Koga Hold and handcuffing did not constitute an arrest [#21 at 13], the Court rejects that argument for the same reasons it rejected Officer Andersen's argument that he had not committed a constitutional violation by applying the Koga Hold and handcuffs. Officer Tope also argues that Plaintiff has not presented sufficient evidence for a jury to conclude that he had a realistic opportunity to intervene. [*id.* at 13-14] "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Vondrak*, 535 F.3d at 1210 (quotation omitted).

Here, considering all the evidence, the Court cannot conclude that a reasonable jury could not possibly find that Officer Tope had sufficient time to intercede to prevent Officer Andersen from performing the Koga Hold and handcuffing Plaintiff. It is undisputed that Officer Tope observed Officer Andersen place Plaintiff in a Koga Hold

and handcuff him, and that Officer Tope did not take any steps to intervene or even express disapproval. [#32-1, TOSF47] Officer Tope is the officer who originally stopped Plaintiff on the side of the road to conduct a welfare check and he did not believe it necessary to restrain Plaintiff with a Koga Hold or handcuffs. [*Id.* at TOSF26, 28, 33] Further, Officer Tope testified that the dynamic between Plaintiff and the officers did not change from the beginning of the encounter until the time when Officer Andersen initiated the Koga Hold, and that he did not see anything to precipitate the need for handcuffs at the time Officer Andersen applied them. [#26-4 at 13, 15] To the contrary, Officer Tope testified that Plaintiff followed the officers' instructions and did not appear to pose any threat to the officers. [*Id.* at 59-60]

Although there may not have been time for Officer Tope to intervene to stop the application of the Koga Hold, Officer Tope described this maneuver as the "standard handcuffing procedure" [#26-4 at 15], and Officer Tope thus was aware as soon as Officer Andersen initiated the hold, that he intended to handcuff Plaintiff. Officer Tope testified that the maneuver involved twisting Plaintiff's wrist behind his back and then ordering Plaintiff to put his other hand on top of his head. [*Id.*] The Court thus cannot conclude that no reasonable jury could possibly find that Officer Tope did not have time between when Officer Andersen first grabbed Plaintiff's wrist and when he applied the handcuffs to intervene to stop Officer Andersen. Yet, despite his testimony that he had not observed any change in Plaintiff's behavior to justify handcuffing him, Officer Tope took no action to intervene or express objection to Officer Andersen applying the handcuffs, which as explained above constituted an unlawful seizure. The Court thus finds the evidence

submitted by Plaintiff, if believed, sufficient to support a claim against Officer Tope for failing to intervene to stop Officer Andersen from handcuffing Plaintiff.

### b.  Clearly Established Law

Officers Andersen and Tope further argue that, even if the Court were to find a constitutional violation, they are entitled to qualified immunity, because Plaintiff cannot establish that the right violated was clearly established.  [#20 at 5-6; #21 at 14]  The Court addresses the right allegedly violated by each officer separately.

### i.  Officer Andersen

In *Lundstrom*, the Tenth Circuit found that police officers responding to a 911 call reporting potential child abuse illegally detained the two residents of the house by handcuffing them during their investigation of the report.  616 F.3d at 1122-25.  When the first officer responded to the scene, the male occupant of the house became upset when he was informed of the purpose of the officer's presence and refused to exit the house. *Id.* at 1116.  The female occupant of the house then exited the house to speak with the officers who had reported to the scene.  *Id.*  Before asking her any questions, the officers handcuffed her, patted her down, and sat her on the curb.  *Id.* at 1117.  Meanwhile, the male occupant of the house was inside speaking with a 911 dispatcher, who told him that there were four or five officers outside his house who would "point their gun[s] at [him] if [he] refuse[d] to come out" of the house.  *Id.*  The male eventually exited his house with his hands raised, at which point the officers handcuffed him and patted him down.  *Id.* at 1117-18.  The Tenth Circuit held that the officers unlawfully detained the female occupant of the house, because "[e]ven granting the officers some latitude in undertaking their community caretaking role, the actions they took in the course of detaining [the female

occupant] were not reasonably related in scope to the investigation." *Id.* at 1123. The Tenth Circuit emphasized that "every fact presented to [the officers] since their arrival at the home indicated there was no ongoing emergency" and the female occupant "did not act in a threatening manner, nor did she refuse to cooperate with police." *Id.* The Tenth Circuit similarly found that the officers unlawfully detained the male occupant of the house by surrounding his house and ordering him to exit and then by handcuffing him. *Id.* at 1123-25. The court noted that "[w]hile [the male occupant] was not as cooperative as we hope citizens would be in response to a law enforcement investigation, nothing indicated he had done anything wrong and he did not pose a threat to the officers." *Id.* at 1124.

The Court finds that *Lundstrom* clearly established that Officer Andersen could not handcuff Plaintiff during a community caretaking investigation where there was no ongoing emergency and Plaintiff was not threatening police or suspected of having a weapon. 616 F.3d at 1122-25; *see also Soza*, 686 F. App'x at 569 (finding that officers' "quick use of handcuffs on [d]efendant after he willingly obeyed [their order for him to put his hands on his head] went too far" and constituted an unlawful arrest). Indeed, the facts here, as told by Plaintiff, provide even less justification for Officer Andersen's use of the Koga Hold and handcuffing than was present in *Lundstrom*. Here, Officer Andersen was not responding to the report of potential child abuse, but instead acknowledges that there was no suspicion of a crime at the time he handcuffed Plaintiff. [#31-1, ASOF 106] In addition, unlike the male occupant of the house in *Lundstrom*, according to Plaintiff, although frustrated with the officers, he complied with all of their orders. [*Id.* at ASOF97, 102, 103] Accordingly, the Court **DENIES** summary judgment to Officer Andersen on Claim One.

### ii.    Officer Tope

Having concluded that the law was clearly established that Officer Andersen's use of the Koga Hold and handcuffing under the circumstances present here violated Plaintiff's Fourth Amendment rights, the Court similarly concludes that Officer Tope's failure to intervene to stop that violation also was clearly established.  See *Vondrak,* 535 F.3d at 1210 (finding law "clearly established" that officer may be held liable for failing to intervene to prevent another officer's constitutional violation); *Smith v. Kenny*, 678 F. Supp. 2d 1125, 1147-48 (D. N.M. 2009) (collecting cases).   Accordingly, the Court **DENIES** the Tope Motion to the extent it seeks summary judgment on the portion of Claim Five that alleges that Officer Tope failed to intervene to stop Officer Andersen from unlawfully seizing Plaintiff by applying handcuffs.

### 2.  Claims Four and Six

Claim Four alleges that Officers Andersen and Tope falsely arrested Plaintiff in violation of the Fourth Amendment when they arrested Plaintiff and transported him to the Larimer County Jail.  [#1 at 18-19]  Claim Six alleges that Officer Andersen falsely imprisoned Plaintiff in violation of the Fourth Amendment when he formally arrested Plaintiff, transported him to the Larimer County Jail, and falsely charged Plaintiff with a crime.[8]  [#1 at 21]  Officers Andersen and Tope maintain that they did not violate Plaintiff's constitutional rights and, in any event, are entitled to qualified immunity.  [#20 at 13-16; #21 at 9-12]  The Court addresses these arguments below.

---

[8] As indicated above, Claims Four and Six appear to allege identical constitutional violations.  As a result, the Court will follow the parties' lead and address the claims together.

### a. The Constitutional Violation

Officers Andersen and Tope argue that Plaintiff cannot establish the lack of probable cause for his arrest or that the officers acted with malice. [#20 at 13-15; #21 at 9-11] Officer Tope also argues that, because he was not the one who arrested Plaintiff, Plaintiff's false arrest claim against him fails. [#21 at 9-10] The Court addresses each officer's actions separately.

### i. Officer Andersen

Officer Andersen argues that "it is undisputed that [Officer] Andersen arrested Plaintiff for striking him in the face with his elbow, which constitutes a second-degree assault under Colorado law." [#20 at 14] According to Officer Andersen, this alleged assault provided probable cause for Plaintiff's arrest. [*Id.*] The problem with Officer Andersen's argument, however, is that Plaintiff disputes striking Officer Andersen or taking any action that could reasonably be construed as an assault. [#31-1, ASOF47, 62, 68] Based on this conflicting testimony, a jury could reasonably find that Plaintiff did not strike Officer Andersen and that Officer Andersen fabricated the alleged assault. A reasonable jury thus could conclude that Officer Andersen lacked probable cause to arrest Plaintiff. *See Hall v. Burke*, 12 F. App'x 856, 861 (10th Cir. 2001) (finding that differing versions of events preceding plaintiff's arrest created jury question on issue of probable cause and therefore precluded summary judgment on false arrest claim); *Martinez v. City of Las Cruces*, No. CIV 04-1136-LCS/LAM, 2005 WL 8163855, at *4 (D.N.M. June 20, 2005) (same); *see also Nosewicz v. Janosko*, 754 F. App'x 725, 734 (10th Cir. 2018) ("Because [plaintiff's] version is not blatantly contradicted by the record,

the judge was required to accept it at [the summary judgment] stage of the proceedings." (quotation omitted)).

The instant case is similar to *Mathias v. Redhouse*. No. 09-CV-65 WJ/GBW, 2010 WL 11591039 (D.N.M. Mar. 22, 2010). There, the defendant officer stopped the plaintiff for driving without wearing a seatbelt. *Id.* at *1 The plaintiff was angry, using profane language, and initially refused to sign the citations. *Id.* at *4. The plaintiff claimed he reached for the defendant's pen, whereas the defendant claimed that plaintiff grabbed the defendant. *Id.* The defendant moved for summary judgment arguing that he had probable cause to arrest the plaintiff for an assault. *Id.* The Court concluded that the dispute over what occurred prior to the plaintiff's arrest precluded summary judgment on the false arrest claim. *Id.* at 4-5. Likewise here, the dispute as to whether Plaintiff struck Officer Andersen precludes this Court from granting Officer Andersen summary judgment based upon a finding of probable cause.

Nor can the Court grant Officer Andersen summary judgment on the issue of malice. Initially, as noted above, in analyzing a false arrest claim, courts use the common law as a starting point and Colorado law does not require malice as an element of a false arrest claim. In any event, as set forth in more detail below, the Court finds that Plaintiff has produced sufficient facts from which a reasonable jury could conclude that Officer Andersen acted with malice. Accordingly, the Court concludes that the disputed material facts preclude a finding in favor of Officer Andersen on the constitutional violation for Claims Four and Six.

### ii.     Officer Tope

With respect to Claims Four and Six, Officer Tope challenges both the constitutional violation and whether the right was clearly established. Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. In *Pearson*, the Supreme Court acknowledged that, in certain cases, "a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id.* at 239. Because the Court finds this principle applicable in evaluating Claims Four and Six against Officer Tope and, as discussed below, finds that Plaintiff has failed to identify a clearly established right allegedly violated by Officer Tope, the Court does not address the first prong of the qualified immunity analysis—*i.e.*, whether Plaintiff has produced sufficient facts to establish the violation of a constitutional right  by Officer Tope.

### b.  Clearly Established Law

Officers Andersen and Tope argue that, even if the Court were to find a constitutional violation, they are entitled to qualified immunity, because Plaintiff cannot establish that the right violated was clearly established. [#20 at 15-16; #21 at 11-12] The Court addresses the right allegedly violated by each officer separately.

### i.     Officer Andersen

"In the context of a qualified immunity defense on an unlawful search or arrest claim, [the Tenth Circuit] ascertain[s] whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the challenged conduct."

*Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quotation omitted).

"Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.* A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.* (quotation omitted).

As detailed above, a jury could reasonably find that Plaintiff did not strike Officer Andersen, and that, instead, Officer Andersen fabricated the alleged assault to justify his arrest of Plaintiff. If Officer Andersen fabricated the grounds for arrest and Plaintiff had, in fact, not done anything wrong, arguable probable cause did not exist. Indeed, it has long been established that an officer may not fabricate grounds for probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Pierce*, 359 F.3d at 1299. Accordingly, the Court concludes that Officer Andersen is not entitled to summary judgment on Claims Four and Six and **DENIES** the Andersen Motion to the extent it seeks summary judgment on those claims.

### ii.     Officer Tope

With respect to Officer Tope, the analysis is different. Officer Tope testified that during the alleged assault on Officer Andersen, Officer Tope was standing close to Plaintiff but was observing the front of the vehicle and was not staring at Plaintiff. [#25-4 at 19-20] He further testified that he did not observe Plaintiff striking Officer Andersen, but that he did see Officer Andersen wheel back and state that Plaintiff just elbowed him in the face. [*Id.* at 19] Plaintiff does not dispute that Officer Andersen announced that Plaintiff had elbowed him in the face. [#31-1, ASOF 70] It is also undisputed that after

announcing that Plaintiff had elbowed him in the face, Officer Andersen placed Plaintiff inside the patrol car.  [*Id.*]

Although Plaintiff contends that Officer Tope is lying when he states that he was "surveying the scene" and "looking for traffic" during the pat-down, Plaintiff also acknowledges that Officer Tope "dart[ed] his eyes away to the horizon, rather than make eye contact" with Plaintiff in "an obvious, practically cartoonish demonstration of 'looking the other way.'"  [#26-2 at ¶ 54]  Plaintiff's testimony thus does not contradict, but rather supports, a finding that Officer Tope was not observing Plaintiff's movements during the alleged elbowing.  The undisputed facts are that Officer Tope observed Officer Andersen wheel back as if he had been struck, and then announce that he had been struck in the face.  Under the facts known to Officer Tope, arguable probable cause existed to arrest Plaintiff.[9]  *See Shimomura v. Carlson*, 811 F.3d 349, 353-55 (10th Cir. 2015) (finding arguable probable cause where officer could have reasonably believed that plaintiff had intentionally or recklessly pushed his roller bag into another officer and caused her some slight physical injury); *Koch v. City of Del City*, 660 F.3d 1228, 1240 (10th Cir. 2011) (holding that officers may rely upon information relayed to them by other officers "as long as such reliance is objectively reasonable" (quotation omitted)).  Accordingly, the Court concludes that Officer Tope is entitled to qualified immunity on Claim Four and **GRANTS** summary judgment to Officer Tope on that claim.  For the same reason, the Court likewise **GRANTS** summary judgment to Officer Tope on Claim Five to the extent that claim is premised on a failure to prevent Officer Andersen's formal arrest of Plaintiff.

---

[9] Unlike Officer Andersen who would know whether he had been struck, Officer Tope, whose focus was not on Plaintiff, would have no way of knowing whether Plaintiff had struck Officer Andersen.

### 3. Claim Seven

Finally, Claim Seven alleges that Officer Andersen maliciously prosecuted Plaintiff, in violation of the Fourth Amendment, when he submitted the Affidavit that began the institution of criminal proceedings against Plaintiff. [#1 at 22-23] Officer Andersen challenges both the constitutional violation and the clearly established prongs of the qualified immunity analysis. [#20 at 13-16]

### a. The Constitutional Violation

Officer Andersen asserts that Plaintiff cannot prove the lack of probable cause or that Officer Andersen acted with malice. [*Id.* at 13-15] With respect to the probable cause analysis, the Court's earlier discussion of probable cause as it related to Claims Four and Six applies equally to Claim Seven. Based upon Plaintiff's testimony, a jury could reasonably find that Plaintiff did not elbow Officer Andersen and thus that no probable cause existed for Plaintiff's prosecution. Accordingly, the Court concludes that material disputed facts remain as to whether Officer Andersen had probable cause to arrest Plaintiff.

The Court likewise concludes that material disputed facts remain on the question of whether Officer Andersen acted with malice. As discussed above, based on Plaintiff's sworn version of events, a reasonable jury may find that Officer Andersen fabricated the alleged assault and thus that arguable probable cause did not exist. The Tenth Circuit has instructed that "[m]alice may be inferred if a defendant causes the prosecution without arguable probable cause." *Stonecipher*, 759 F.3d at 1146; *see also Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1124 (D. Colo. 2014) ("[F]alsifying or omitting evidence knowingly and intentionally, or with reckless disregard for the truth, is sufficient to establish malice

in the context of malicious prosecution claims." (quotations omitted)). Thus, because Plaintiff's sworn version of events, which is not blatantly contradicted by the record such that it must be disregarded, establishes a lack of arguable probable cause, the Court may presume malice. Accordingly, the Court concludes that the disputed material facts preclude a finding in favor of Officer Andersen on the constitutional violation for Claim Seven.

### b. Clearly Established Law

As detailed above, a reasonable jury could conclude that Officer Andersen fabricated the grounds for Plaintiff's arrest and that arguable probable cause did not exist. And, it has long been established that an officer may not fabricate grounds for an arrest. *Franks*, 438 U.S. at 155-56; *Pierce*, 359 F.3d at 1299; *see also Smith v. Havard*, No. 13-CV-00969-CMA-CBS, 2013 WL 6670432, at *2 (D. Colo. Dec. 18, 2013) ("*Pierce* demonstrates that it is clearly established that a constitutional violation occurs when an officer falsifies evidence to garner the arrest and prosecution of an innocent person."). Moreover, at the time of Plaintiff's arrest, it was established in the Tenth Circuit that malice may be inferred from an arrest made without arguable probable cause. *Stonecipher*, 759 F.3d at 1146. Accordingly, the Court **DENIES** the Andersen Motion to the extent it seeks summary judgment on Claim Seven.[10]

---

[10] Plaintiff has failed to point to any facts between Officer Andersen's arrest of Plaintiff and the subsequent prosecution of Plaintiff that would have notified Officer Tope that Officer Andersen's allegations were untrue. Thus, for the same reason the Court grants summary judgment to Officer Tope on the false arrest claim, the Court **GRANTS** summary judgment to Officer Tope on Claim Five to the extent that claim is premised on Officer Tope's failure to intervene in Officer Andersen's prosecution of Plaintiff.

## B. Excessive Force Claims

Claim Two alleges that Officer Andersen used excessive force in violation of the Fourth Amendment when he applied the Koga Hold and handcuffed Plaintiff. [#1 at 15-16] Claim Three alleges that Officers Andersen and Tope used excessive force in violation of the Fourth Amendment when Officer Andersen slammed Plaintiff against the hood of Officer Tope's patrol car. [*Id.* at 16-17] The Court addresses each claim below.

### 1. Claim Two

In Claim Two, Plaintiff alleges that Officer Andersen used excessive force when he applied the Koga Hold and handcuffed Plaintiff. Officer Andersen challenges both the constitutional violation and the clearly established nature of the right. [#20 at 6-9] The Court addresses each argument below.

### a. The Constitutional Violation

"[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[11] *Graham v. Connor*, 490 U.S. 386, 395 (1989). "In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez*, 478 F.3d at 1129. Under Tenth Circuit law, "in a handcuffing case 'to recover on an excessive force claim,

---

[11] Although Officer Andersen argues that Plaintiff cannot show that he was under arrest at the time Officer Andersen applied the Koga Hold and handcuffed Plaintiff [#20 at 4-5], as the *Graham* Court held thirty years ago, excessive force can occur during an investigatory stop or other seizure. 490 U.S. at 395.

a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional.'" *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (quoting *Cortez*, 478 F.3d at 1129 n.25). In addressing whether the officers used greater force than necessary, the Tenth Circuit considers the following three non-exclusive factors first enunciated in *Graham*: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Here, the first *Graham* factor weighs in favor of Plaintiff's Second Claim. Officer Andersen concedes that Plaintiff had not committed any crimes, and that Officer Andersen was instead merely conducting a welfare check. [#31-1, ASOF56, 106] Thus, given the lack of criminal activity, the Court concludes that the first factor supports Plaintiff's claim.

The second factor likewise supports Plaintiff's claim. Plaintiff's sworn testimony is that he was not being aggressive toward the officers [*id.* at ASOF50], and the Court must credit that testimony at this stage of the proceedings.[12] *Nosewicz*, 754 F. App'x at 734. Moreover, beyond speculation, Officer Andersen did not have any indication that Plaintiff had a weapon. [#31-1, ASOF57] Thus, the second *Graham* factor weighs in favor of Plaintiff's claim.

---

[12] Plaintiff also submitted testimony from Officer Tope confirming that, throughout the encounter with the officers, Plaintiff complied with all of their orders and did not threaten the officers. [#26-4 at 23-24]

Finally, the third factor supports Plaintiff's claim.  Other than possibly raising his hands in apparent frustration with the officers, there is no indication that Plaintiff was resisting commands or attempting to flee.  [*Id.* at ASOF47, 103-04]  As a result, the third *Graham* factor likewise supports Plaintiff's claim.  Thus, the Court concludes that Plaintiff has offered sufficient evidence from which a reasonable jury could conclude that Officer Andersen used greater force than reasonably necessary.

Plaintiff has also presented facts demonstrating more than de minimis actual injury. Plaintiff's sworn testimony is that he experienced "extraordinary pain" and that his right wrist was sore and tender for weeks afterward.  [*Id.* at ASOF121, 133]  He further maintains that he continues to suffer from pain in his right wrist.  [*Id.* at ASOF133]  The Court concludes that Plaintiff's testimony, if believed by the jury, constitutes more than de minimis actual injury.  *White v. City & Cty. of Denver*, No. 13-cv-01761-CMA-MJW, 2014 WL 3953135, at *2 (D. Colo. Aug. 12, 2014) (finding plaintiff's allegations of "stiffness in his bilateral thumbs and numbness in his right hand, in addition to bilateral wrist injuries" constituted more than de minimis injury); *Kraus v. Ferrari*, No. 08-cv-02808-WDM-BNB, 2010 WL 3430839, at *6 (D. Colo. Aug. 30, 2010) (finding evidence that plaintiff "had pain and numbness for some time that interfered with his grip and ability to do his job," even with no actual nerve damage, sufficient to send excessive force from handcuffing claim to a jury).  Accordingly, the Court finds that Plaintiff has offered sufficient evidence to support both components of his excessive force claim based upon Officer Andersen's use of the Koga Hold and handcuffing.

## b. Clearly Established Law

Plaintiff, however, has failed to identify any precedent that clearly establishes that the use of these techniques was unlawful. As previously noted, the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted). "[T]he 'specificity' of the rule is especially important in the Fourth Amendment context." *Id.* (quotation omitted).

In support of his clearly established analysis, Plaintiff cites primarily to *Graham* and to older Tenth Circuit precedent for the proposition that "an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was a legitimate justification for acting as she did." [#25 at 11 (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008))] But, the Supreme Court has recently held that "*Graham* do[es] not by [itself] create clearly established law outside an obvious case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quotation omitted). The Court does not find this to be an obvious case.

Although, as explained above, the Tenth Circuit in *Lundstrom* clearly established that, absent exigent circumstances, an officer may not use handcuffs to detain a compliant suspect as part of an investigatory stop, the *Lundstrom* Court did not consider whether the officers' use of handcuffs in that case constituted excessive force.[13] "Where,

---

[13] Although one of the plaintiffs in *Lundstrom* asserted a claim for excessive force, that claim was based upon the officers "pressing, shoving, and twisting him *after* he had been handcuffed." 616 F.3d at 1126 (emphasis added). Here, Claim Two is premised upon

as here, claims of excessive force are coupled to viable claims of unlawful arrest, the Court may not simply assume that all force used to carry out a potentially unlawful arrest was, by definition, excessive; rather, the Court is required to assess the excessive force claim 'under the assumption that the arrest was lawful.'"[14] *Brickey v. Weyler*, No. 11-CV-02175-MSK-MEH, 2013 WL 1137132, at *7 (D. Colo. Mar. 19, 2013) (quoting *Romero v. Story*, 672 F.3d 880, 890 (10th Cir.2012)).

Because Plaintiff has failed to cite any precedent that would have put Officer Andersen on notice that his use of the Koga Hold and handcuffing constituted excessive force, the Court concludes that Officer Andersen is entitled to qualified immunity on Claim Two. *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (noting that because plaintiff failed to "direct[ ] [the court's] attention" to a decision that clearly established the relevant right, the court could hold—"[o]n this basis alone"—that plaintiff failed to "properly la[y] the groundwork to defeat [defendant's] assertion of qualified immunity"). Accordingly, the Court **GRANTS** summary judgment to Officer Andersen on Claim Two. For the same reason, the Court likewise **GRANTS** summary judgment to Officer Tope on Claim Five to the extent that claim is premised on a failure to prevent Officer Andersen's use of the Koga Hold and handcuffing.

---

Officer Andersen's conduct in applying the Koga Hold and then handcuffing Plaintiff. The Tenth Circuit's analysis of the excessive force claim in *Lundstrom* thus is inapplicable, particularly given that the court there relied, in part, on the fact that the plaintiff was handcuffed at the time the additional force was applied. *Id.* at 1126-27.

[14] However, "[i]f the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest." *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

### 2. Claim Three

Claim Three alleges that Officers Andersen and Tope used excessive force in violation of the Fourth Amendment when Officer Andersen slammed Plaintiff against the hood of Officer Tope's patrol car. [#1 at 16-17] Officers Andersen and Tope challenge both the constitutional violation and the clearly established nature of the right. [#20 at 9-13; #21 at 3-8] The Court addresses each argument below.

### a. The Constitutional Violation

Officers Andersen and Tope argue that Plaintiff has failed to present evidence that the officers used excessive force or that Plaintiff was injured because of the alleged excessive force. [#20 at 11-13; #21 at 6-8] The Court addresses each officer's actions separately.

### i.    Officer Andersen

As with Claim Two, the Court applies the *Graham* factors to Claim Three's excessive force allegation. The first *Graham* factor weighs in favor of Plaintiff's Third Claim. Plaintiff maintains that Officer Andersen slammed Plaintiff into the patrol car prior to Plaintiff's alleged assault on Officer Andersen, an allegation Plaintiff denies in any event. [#31-1 at ASOF68, 129] Were the jury to believe Plaintiff's version of events, the force employed by Officer Andersen occurred at a time when Plaintiff had not committed any crime, and was merely being investigated as part of a welfare check. Thus, this first factor weighs in Plaintiff's favor.

The second factor likewise supports Plaintiff's claim. Again, Plaintiff's sworn testimony is that he was not being aggressive toward the officers [*id.* at ASOF50], and the Court must credit that testimony at this stage of the proceedings. *Nosewicz*, 754 F.

App'x at 734. Moreover, beyond speculation, Officer Andersen did not have any indication that Plaintiff had a weapon. [#31-1, ASOF57] Thus, the second *Graham* factor weighs in favor of Plaintiff's claim.

Finally, the third *Graham* factor supports Plaintiff's claim. Other than possibly raising his hands in apparent frustration with the officers, there is no indication that Plaintiff was resisting commands or attempting to flee. [*Id.* at ASOF47, 103-04] As a result, the third factor likewise supports Plaintiff's claim. Thus, the Court concludes that Plaintiff has offered sufficient evidence from which a reasonable jury could conclude that Officer Andersen used greater force than reasonably necessary.

Officers Andersen and Tope also argue that Plaintiff fails to present evidence that he suffered an injury as a result of Officer Andersen's conduct. Plaintiff maintains that Officer Andersen shoved his knee and thigh into Plaintiff's groin and then slammed Plaintiff's upper torso down onto the hood of the car, causing Plaintiff's head to hit the hood of the vehicle, which caused Plaintiff pain and terror. [*Id.* at ASOF61, 125] Plaintiff further maintains that Officer Andersen forcibly pulled Plaintiff's handcuffed hands away from his body, up towards the sky, and then slammed Plaintiff's body back down into the patrol car. [*Id.* at ASOF129] Plaintiff has declared under oath that he suffered shoulder subluxation on his right shoulder as a result of the alleged assault by Officer Andersen. [*Id.* at ASOF133] Plaintiff states that he felt persistent pain, instability, aching, and soreness in his shoulder for months, and that his shoulders have become permanently

less stable and still ache painfully at times. [*Id.*] The Court concludes that these facts, if believed by a jury, are sufficient to establish an actual injury.[15]

Accordingly, the Court finds that Plaintiff has provided sufficient evidence to support the excessive force claim asserted against Officer Andersen in Claim Three. *See Morris v. Noe*, 672 F.3d 1185, 1190, 1195-96 (10th Cir. 2012) (finding officers engaged in excessive force when they tackled and handcuffed non-resistant individual whom officers had probable cause to believe had committed misdemeanor assault).

### ii.    Officer Tope

With respect to Officer Tope, the Court agrees with Defendants that Officer Tope's holding of Plaintiff's arm does not constitute excessive force. The undisputed facts demonstrate that Officer Tope did not personally use any force against Plaintiff. [#32-1, TSOF54] Thus, to the extent Claim Three against Officer Tope is premised on Officer Tope "holding Plaintiff's arm" while Officer Andersen conducted the pat-down and allegedly slammed Plaintiff into the patrol vehicle, the Court **GRANTS** summary judgment to Officer Tope.

However, Officer Tope may still be held liable for his alleged failure to intervene. "An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under [Section] 1983." *Fogarty*, 523 F.3d at 1162. "In order to be liable for

---

[15] In the Andersen Motion, Officer Andersen argues that Plaintiff cannot prove the second prong of his excessive force claim—"actual injury that is more than *de minimis.*" [#20 at 12] The Tenth Circuit, however, has "reject[ed] the . . . premise . . . that there is a de minimis injury requirement for Fourth Amendment excessive force claims in cases which involve more than handcuffing." *United States v. Rodella*, 804 F.3d 1317, 1328–29 (10th Cir. 2015). Claim Three is based upon Officer Andersen's alleged conduct *after* Plaintiff was handcuffed and clearly alleges "more than handcuffing"—*e.g.*, that Officer Andersen forcibly pulled Plaintiff's handcuffed hands away from his body, up towards the sky, then slammed Plaintiff's body back down into the patrol car.

failure to intervene, [an] officer[ ] must have observe[d] or ha[d] reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Norton*, 809 F.3d at 576 (quotation omitted).

Here, as outlined above, the Court concludes that Plaintiff's version of events, if believed, constitutes the excessive use of force by Officer Andersen. Moreover, if Plaintiff's version of events is believed, Officer Tope had an opportunity to intervene and failed to do so. According to Plaintiff, while the alleged assault was occurring, Officer Tope stood "quite close" to Plaintiff and held his arm. [#32-1, TSOF54, 91] Officer Tope has testified that Plaintiff's upper torso was in his field of vision. [#25-4 at 19-20] Plaintiff claims that after Officer Andersen initially slammed his body onto the hood, Plaintiff reached out to Officer Tope and said "I am not resisting! Help me!" [#32-1, TSOF113] Plaintiff also claims that he screamed out in pain. [*Id.* at TSOF141] Officer Tope allegedly tried not to make eye contact with Plaintiff and instead darted his eyes towards the horizon. [*Id.* at TSOF113] Under these facts, a jury could reasonably conclude that Officer Tope was aware of the assault from the moment Officer Andersen allegedly first slammed Plaintiff into the hood of the car and failed to take any measures to intervene to prevent it. Accordingly, to the extent Plaintiff's Fifth Claim is premised upon Officer Tope's failure to intervene to prevent Officer Andersen's alleged excessive force, the Court concludes that Plaintiff has presented sufficient facts to support a constitutional violation.

### b. Clearly Established Law

The Court likewise concludes that at the time of the incident the officers' conduct violated Plaintiff's clearly established rights. The facts in *Morris*, decided in 2012, closely parallel those here, except that in *Morris* the officers had probable cause to believe the

suspect had committed a misdemeanor, whereas here the officers were merely conducting a welfare check. *See Morris*, 672 F.3d at 1190, 1195-96. Moreover, "Tenth Circuit precedent clearly establishe[s] . . . that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). Accordingly, the Court concludes that a reasonable jury believing Plaintiff's version of events could conclude that the officers violated clearly established law. Accordingly, the Court **DENIES** the Andersen Motion on the excessive force component of Claim Three and **DENIES** the Tope Motion on the related failure to intervene component of Claim Five.

### C. Unlawful Search Claims

In addition to alleging an excessive force claim, Claim Three also alleges that Officers Andersen and Tope conducted an unlawful search, in violation of the Fourth Amendment, when Officer Andersen conducted the pat-down search. [#1 at 16-17] Officers Andersen and Tope challenge both the existence of a constitutional violation and whether the law regarding such a violation was clearly established. [#20 at 9-11; #21 at 4-6] The Court addresses each argument below.

### 1. The Constitutional Violation

Officers Andersen and Tope argue that the pat-down search was constitutional. [#20 at 10-11; #21 at 4-6] The Court addresses each officer separately.

### a. Officer Andersen

"The Fourth Amendment protects persons against unreasonable searches and seizures." *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014) (quotation omitted). "Pat-down searches are constitutional when an officer has reasonable

suspicion that an individual is armed and dangerous." *Id.* (quotation omitted). "The primary justification for a pat-down search is an officer's concern 'that [his or her] safety or that of others was in danger.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). A pat-down search "must therefore be confined in scope to an intrusion reasonably designed to discover 'guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" *United States v. Perez*, No. 09-20096-01-KHV, 2010 WL 571839, at *3 (D. Kan. Feb. 12, 2010) (quoting *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002)).

Officer Andersen argues that the circumstances that he confronted justified a pat-down search for weapons. [#20 at 11] The Court need not reach this issue because the Court agrees with Plaintiff that, under Plaintiff's version of events, Officer Andersen's actions were "not limited to 'patting' [Plaintiff] down for weapons but instead was an invasive groping all over Plaintiff's body." [#25 at 11; #31-1, ASOF130] In his Declaration, Plaintiff states that Officer Andersen "actually dug around in, and physically searched the interior of, [Plaintiff's] pants pockets." [#26-2, ¶ 58] Plaintiff further declares that his jeans "were fitted, not baggy in the slightest." [*Id.*] The digging around in Plaintiff's fitted jeans pockets is not consistent with a limited search for weapons or hidden instruments that could be used to assault an officer. *See Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993) (holding that "continued exploration of [suspect's] pocket" after the *Terry* pat-down "was unrelated to [t]he sole justification of the search [under *Terry*:] . . . the protection of the police officer and others nearby"); *United States v. Perez*, 408 F. App'x 198, 200, 202 (10th Cir. 2011) (upholding district court's finding that officer exceeded constitutional scope of *Terry* pat-down by "continu[ing] to pat [suspect's] right rear pocket and slide his

hand in that area to try to identify a small object in [suspect's] pocket"); *see also United States v. Aquino*, 674 F.3d 918, 926-27 (8th Cir. 2012) (finding it unreasonable for officer to first search underneath suspect's clothing rather than conducting traditional pat-down for weapons); *United States v. Casado*, 303 F.3d 440, 448-49 (2d Cir. 2002) (holding that officer's failure to conduct pat-down prior to reaching into suspect's pants pockets was unreasonable search).

### b. Officer Tope

Claim Three also asserts an unlawful search claim against Officer Tope. [#1 at 16-17] Specifically, Plaintiff alleges that Officer Tope was "a material participant in the constitutional violation" because he was standing next to Officer Andersen while Officer Andersen conducted the pat-down and was holding Plaintiff's arm. [*Id.*] In addition to arguing that the pat-down search was reasonable, Officer Tope also argues that he was not personally involved in the search. [*Id.* at 4-6] The Court agrees that Plaintiff has failed to provide any evidence to support a finding that Officer Tope personally participated in the pat-down search. Instead, the undisputed facts merely establish that Officer Tope was present in close proximity and held Plaintiff's arm during the search.[16] [#32-1,

---

[16] Plaintiff further argues that Officer Tope "participated" in the pat-down search by "acting as an armed cover officer while the violation[ ] t[ook] place." [#26 at 6-7] Plaintiff fails to cite any Tenth Circuit precedent to support a finding of personal participation in an unlawful search based solely upon the officer's being present and acting as a "cover." In *Starr v. Downs*, the plaintiff asserted a claim for unlawful search against an officer who questioned the plaintiff in a police car while another officer conducted an allegedly unlawful search of his car. 117 F. App'x 64, 66-67, 70 (10th Cir. 2004). The officer conducting the search of the plaintiff's car twice brought items recovered from the search to the officer questioning the plaintiff in the police car. *Id.* at 66. Despite the questioning officer's knowledge of the search and restraint of the plaintiff during the search of his car, the Tenth Circuit found that the questioning officer had not personally participated in the search and thus was entitled to summary judgment on the unlawful search claim. *Id.* at 70. Accordingly, the Court finds Officer Tope's alleged role as the "cover officer"—

ASOF54] Thus, to the extent Claim Three against Officer Tope is premised on Officer Tope "holding Plaintiff's arm" while Officer Andersen conducted the pat-down search, the Court **GRANTS** summary judgment to Officer Tope. *See Starr v. Downs*, 117 F. App'x 64, 70 (10th Cir. 2004) (affirming summary judgment on unlawful search claim against officer who did not personally participate in search of car).

In addition to Claim Three, however, Plaintiff also alleges in Claim Five that Officer Tope failed to intervene to prevent Officer Andersen from conducting the illegal search. [#1 at 19-21] The Court concludes that the illegal search component of Claim Five presents one of those situations where the Court can rather quickly and easily decide that there was no violation of clearly established law, whereas an analysis of the constitutional violation presents a far more difficult question. *Pearson*, 555 U.S. at 239. Accordingly, with respect to the question of whether Officer Tope should be granted qualified immunity for failing to intervene to prevent the allegedly unlawful search conducted by Officer Andersen, the Court will focus its analysis on the second prong of the qualified immunity analysis.

### 2. Clearly Established Law

Officers Andersen and Tope further argue that, even if the Court were to find a constitutional violation, they are entitled to qualified immunity, because Plaintiff cannot establish that the right violated was clearly established. [#20 at 11; #21 at 6] The Court addresses the right allegedly violated by each officer separately.

---

particularly without any evidence that Officer Tope was "covering" Officer Andersen for the express purpose of conducting a pat-down search—insufficient to satisfy the personal participation requirement for a Section 1983 unlawful search claim.

### a. Officer Andersen

The Court concludes that the law was clearly established at the time of Officer Andersen's search that his actions impermissibly exceeded that of a *Terry* pat-down. As noted above, both the Supreme Court and the Tenth Circuit have concluded that going inside an individual's pockets or clothing under circumstances like those presented here exceeds a *Terry* pat-down and thus constitutes an unconstitutional search. *Dickerson*, 508 U.S. at 378; *Perez*, 408 F. App'x at 200, 202. Accordingly, the Court **DENIES** the Andersen Motion to the extent it seeks summary judgment on the illegal search component of Claim Three.

### b. Officer Tope

With respect to Plaintiff's failure to intervene claim against Officer Tope, however, the analysis is different. As noted above, the law is clearly established that an officer can be held liable for failing to intervene to avoid a constitutional law violation. *See Vondrak*, 535 F.3d at 1210 (finding law "clearly established" that "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official" (quotation omitted)); *Kenny*, 678 F. Supp. 2d at 1147-48 (collecting cases). However, "[i]n order to be liable for failure to intervene, [an] officer[ ] must have observe[d] or ha[d] reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Norton*, 809 F.3d at 576 (quotation omitted).

Here, the evidence supports a finding that Officer Tope had the opportunity to intervene prior to the actual pat-down, but the Court cannot conclude that the law was clearly established that Officer Andersen could not conduct a legitimate, constitutional

pat-down search. The undisputed facts are that the encounter occurred late at night, on a rural, unlit road. [#31-1, ASOF13, 15] Plaintiff was both frustrated and irritated, and was exhibiting animated gestures consistent with someone expressing frustration. [*Id.* at ASOF30, 38] Plaintiff has not identified any cases that clearly establish that Officer Andersen could not conduct a pat-down search for weapons under these circumstances,[17] and the Court is aware of none.

Moreover, although the law was clearly established that Officer Andersen could not dig into Plaintiff's pants pockets during the pat-down, Plaintiff has not provided sufficient facts from which a reasonable jury could possibly conclude that Officer Tope had an opportunity to intervene stop Officer Andersen. The evidence provided does not specify (1) the amount of time that Officer Andersen was searching Plaintiff's pants pockets; (2) that Officer Tope actually saw Officer Andersen digging into Plaintiff's pants

---

[17] It is Plaintiff's obligation to identify precedent establishing the clearly established right. *See Cox*, 800 F.3d at 1247 (noting that because plaintiff failed to "direct[ ] [court's] attention" to decision that clearly established the relevant right, court could hold—"[o]n this basis alone"—that plaintiff failed to "properly la[y] the groundwork to defeat [defendant's] assertion of qualified immunity"). The only case identified by Plaintiff to define the clearly established right to be free from the pat-down search conducted by Officer Andersen is *Terry* [#26 at 15], a case in which the Supreme Court found the pat-down search at issue to be constitutional, 392 U.S. at 29-30. Moreover, the facts of *Terry*, involving an investigative pat-down of individuals suspected of casing a store in downtown Cleveland, 392 U.S. at 5-6, are not sufficiently similar to the facts of this case to be instructive. *See Wesby*, 138 S. Ct. at 590 (emphasizing that courts "must not define clearly established law at a high level of generality," especially in the Fourth Amendment context). Nor does the Court agree with Plaintiff that Officer Andersen's decision to conduct a pat-down search of Plaintiff constituted such outrageous government conduct that it obviously was unconstitutional without reference to any specific precedent. *See Cobb v. Rodriguez*, No. 3:13-cv-01353-BEN-JMA, 2016 WL 6698901, at *5 (S.D. Cal. Nov. 15, 2016) (finding pat-down search justified where plaintiff appeared from a dark, wooded area, and immediately acted in a hostile manner toward officers).

pockets;[18] or (3) that Officer Tope had an opportunity to stop that violation. Accordingly, the Court concludes that Officer Tope is entitled to qualified immunity and thus **GRANTS** summary judgment to Officer Tope on the unlawful search component of Claim Five.

### D. First Amendment Claim

Claim Eight alleges that Officer Andersen retaliated against Plaintiff in violation of the First Amendment. [#1 at 23-24] Officer Andersen challenges both the constitutional violation and whether the right was clearly established. [#20 at 16-18]

#### 1. The Constitutional Violation

To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Officer Andersen challenges both the second and third elements. [#20 at 16-17]

Officer Andersen initially argues that because Plaintiff continued to criticize Officer Andersen after his arrest, his speech was not chilled and therefore the second element is not satisfied. [*Id.* at 17] This argument applies the wrong legal standard. The standard is objective, not subjective. *Shero*, 510 F.3d at 1203. "Thus, the relevant inquiry is not whether the plaintiff was actually deterred from exercising his constitutional rights, but whether a person of ordinary firmness in the plaintiff's position would have been so

---

[18] To the contrary, Plaintiff acknowledges that Officer Tope was looking away for at least part of the encounter. [#26-2, ¶ 54]

deterred." *Jenner v. Brightwell*, No. 14-CV-00916-RBJ-KMT, 2016 WL 11383921, at *5 (D. Colo. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1248663 (D. Colo. Mar. 29, 2016); *see also Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004) (finding that "the objective standard permits a plaintiff who perseveres despite governmental interference to bring [a retaliation claim]"). And, "it is clear that [Officer Andersen's] pursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity."[19] *Esparza v. Bowman*, 523 F. App'x 530, 536 (10th Cir. 2013) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). The Court thus concludes that a reasonable jury could find that Plaintiff has satisfied the second element of his retaliation claim.

The Court likewise concludes that a reasonable jury could conclude that Plaintiff has satisfied the third element of his retaliation claim. The Supreme Court recently made clear in a First Amendment retaliatory arrest case that, "if the plaintiff establishes the absence of probable cause, then the [*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)] test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) (quotation

---

[19] In his reply brief, Officer Andersen shifts the focus to argue that Plaintiff cannot demonstrate injury. [#31 at 12] But, Plaintiff maintains that he suffered stress and trauma while awaiting trial, that he suffered from resulting depression, that he was required to submit to continued monitoring as a condition of his bond, that he was required to pay for his legal defense, and that his political career has been ruined. [#31-1, ASOF145-50] Officer Andersen responds to these injuries by stating that they are all either inadmissible, de minimis, or simply non-existent, but fails to provide any explanation for this conclusion. [#31 at 12] Certainly, Plaintiff can testify himself about these injuries, and the Court disagrees that these injuries are de minimis.

omitted).   Here, as described above, a reasonable jury could conclude that Officer Andersen arrested Plaintiff without probable cause.  Officer Andersen has failed to show that he would have initiated the arrest without respect to retaliation, and a reasonable jury could infer that Officer Andersen fabricated the grounds for the arrest in retaliation for Plaintiff criticizing the police officers.  Accordingly, the Court concludes that Plaintiff has offered sufficient evidence in support of the third element of his retaliation claim and that a reasonable jury could conclude that Officer Andersen arrested Plaintiff in retaliation for Plaintiff's exercise of his First Amendment rights.

### 2.  Clearly Established Law

The Court concludes that Plaintiff's right to be free from an arrest without probable cause in retaliation for his criticism of the police was clearly established.  Since at least 1987, the law has been clearly established that the First Amendment protects a "significant amount of verbal criticism and challenge directed at police officers" so long as the activity does not involve "fighting words."  *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).  Moreover, as the Tenth Circuit has previously held, "it is clear that [Officer Andersen's] pursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity."  *Esparza*, 523 F. App'x at 536. Accordingly, the Court **DENIES** the Andersen Motion with respect to Claim Eight.

### IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS IN PART AND DENIES IN PART** Officer Andersen's Motion for Summary Judgment [#20] and **GRANTS IN PART AND DENIES IN PART** Officer Tope's Motion for Summary Judgment [#21].  Specifically, the Court **ORDERS** as follows:

1. The Andersen Motion is **GRANTED** with respect to Claim Two and summary judgment shall enter in favor of Officer Andersen on that claim;

2. The Andersen Motion is **DENIED** with respect to Claims One, Three, Four, Six, Seven, and Eight;

3. The Tope Motion is **GRANTED** with respect to Claims Three, Four, and Five to the extent Claim Five is premised on a failure to intervene in Officer Andersen's (a) use of excessive force by applying the Koga Hold and handcuffs as alleged in Claim 2, (b) unlawful search as alleged in Claim 3, (c) unlawful arrest for assault as alleged in Claims 4 and 6, and (d) malicious prosecution of Plaintiff as alleged in Claim 7; and

4. The Tope Motion is **DENIED** with respect to Claim Five to the extent Claim Five is premised on a failure to intervene in Officer Andersen's false arrest as alleged in Claim One and excessive use of force as alleged in Claim Three.

DATED: June 25, 2019          BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge